UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No.  3:22-CR-00077-DRL |
| | ) | |
| OPEDIAH BARNETT | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

Comes now the United States of America, by its counsel, Clifford D. Johnson, United States Attorney for the Northern District of Indiana, through John M. Maciejczyk, Assistant United States Attorney, and submits the following memorandum in preparation for the sentencing hearing in this case.

1. On April 17, 2023, the defendant pled guilty to two counts of a four-count Indictment. Counts 1 and 2 charged Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e).   There is no plea agreement.

2. The Final Presentence Report ("PSR"), filed October 5, 2023, Dkt. 40, was objected to by the Defendant with regard to the sentencing enhancement under U.S.S.G. §4B1.5(b)(1). Dkt. 41.  This will be discussed below. The Government had no objections to the Final PSR.

3. The PSR calculates a guideline range for this defendant of 292 to 365 months.  PSR ¶ 86.  The fine guideline range is $50,000 to $250,000.

PSR ¶ 100. Given the defendant's financial situation, he does not have the ability to pay a fine. PSR ¶ 84. He is required to pay a $200 mandatory special assessment. PSR ¶ 99. He is also subject to a Justice To Victims of Trafficking Act assessment of $5,000 per count to be assessed against non-indigent defendants. *Id.* As noted above, he is indigent. PSR ¶ 84. The defendant is subject to an assessment of up to $50,000 per count pursuant to the AVAA, 18 U.S.C. § 2259A(a)(3). Supervised release upon completion of the sentence of confinement is from 5 years to life. PSR ¶ 92.

4. The defendant is obligated to pay restitution in this matter. PSR ¶ 102. The government is still working with the victims to determine their restitution amounts. If no information is received, the government will recommend that the court order a minimum restitution of $3,000 per victim, payable to the clerk, which may be modified pursuant to 18 U.S.C. § 3664(d)(5) if subsequently further losses are discovered.

5. There is no plea agreement in this case. As detailed below, the government recommends a sentence of 292 months imprisonment, to be followed by 5 years supervised release, no fine, a $100 special assessment, no JVTA assessment, no assessment under the AVAA, and restitution of $3,000 per victim, pending receipt of further information from the victims' representatives.

6. The application of 18 U.S.C. § 3553(a) factors supports the

recommended sentence. These factors include the following:

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant;**

The factual basis of the offense is contained in paragraphs 10-19 of the PSR. The aggravating nature of the offense is that Barnett not only exploited two minor females into sending him pornographic images of themselves, but he also was in contact with another minor female who attended the same school as Jane Doe #2. Furthermore, Barnett spoke of travelling to Washington DC to meet with Jane Doe #1 and actually did travel over 8 hours to West Virginia to meet with Jane Doe #2.

The guidelines do not take into account the impact of the offense on the victims, which should be considered as part of "the nature and circumstances of the offense." Additionally, an article published in the Journal of Child Abuse & Neglect reports on the lasting impact of child pornography in a study of 133 adult survivors. Gerwirtz-Meyden, Walsh, Wolak, Finkelhor, *The Complex Experience of Child Pornography Survivors*, 80 Child Abuse & Neglect 238-248 (April, 2014). The common themes discovered by the study were:

- Feelings of guilt and shame that the images are being circulated;
- Feelings that someone would think that they were willing participants;
- Concern of being recognized in public;
- Concern of being recognized by friends or acquaintances;

- Refusing to be photographed by family or friends;

*Id.* at 242. Many reported that "they live in constant fear their images will surface and will be viewed by people they know, their family, or their children. Fears of the images and films circulating impacted their ability to continue with their lives or to let go of the past. Many survivors were triggered daily by the fear of being recognized or exposed." Id. at 244. Many survivors also felt "haunted" by the circulation of the images:

> Experiencing CP seems to encompass two stages of victimization. One, from a legal point of view, when the abuse is perpetrated and recorded and one from a psychological point of view, implying the ongoing vulnerability of survivors and the unknown aspect regarding the circulation of the images. Participants discussed the life-long vulnerability as a result of the images. According to them, while the abuse *per se* ended, the images will forever be out there, and they felt as if they were haunted by them. Even years after the crime, survivors were worried that the images might be seen by other people or family members, that they would be recognized, or that the images would be used by sex offenders for masturbation or to entice other children into abusive situations. For many respondents, the images were a concrete reminder of their victimization that could reveal their past, or be used for criminal purposes without warning to them and outside of their control.

Id. at 246. Other studies also support the conclusions of the Gerwirtz-Meyden study. *See, e.g.*, Canadian Centre for Child Protection (2017). *Survivor's survey*. Retrieved from https://www.protectchildren.ca/pdfs/C3P_Survivors SurveyExecutiveSummary2017_en.pdf; Martin, J. (2014). *"It's just an image, right?": Practitioners' understanding of child sexual abuse images online and effects on victims.* Child & Youth Services, 35, 96–115,

http://dx.doi.org/10.1080/0145935X.2014.924334.

The government expects to have victim impact statements from Jane Doe#1 and Jane Doe#2 and a parent for each in this case. Jane Doe #2 apparently was very affected by the offense, to the extent of attempting suicide and it seriously affecting her social life. Those statements will be forwarded to the Court as soon as possible.

"In mitigation, it appears the defendant lacked adequate parenting while growing up. Additionally, there is a family history of both substance abuse and mental health disorders. These have also affected the defendant, who is on psychotropic medication for depression and has exhibited a polysubstance abuse problem dating back to age 14. The defendant also had the traumatic experience of observing his stillborn son. The defendant has a good work history, despite having no formal education. The instant offense represents his first conviction of any type and in any court." PSR ¶ 108. The defendant also cooperated fully with the government when the search warrant was executed at his residence. As a result of his cooperation the government, and also the parents of Jane Doe #2, became aware of her victimization.

**(2) the need for the sentence imposed—**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

A sentence of 292 months for this 31-year-old offender will adequately

reflect the seriousness of the offense. As discussed above, this offense has a devastating negative impact on victims. Child sex abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana,* 554 U.S. 407, 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (citation omitted). A 292 month sentence will also adequately promote respect for the law, and provide just punishment for the offense because it is consistent with the guidelines and consistency promotes respect for the law.

**(B) to afford adequate deterrence to criminal conduct;**

**(C) to protect the public from further crimes of the defendant;**

A sentence of 292 months will help provide adequate deterrence to others who may contemplate committing similar crimes. According to the National Center for Missing and Exploited Children ("NCMEC"), which operates a "CyberTipline" for these offenses, in 2022 they saw an 82% increase in reports concerning online enticement last year, up to 80,524 reports. NCMEC, https://www.missingkids.org/ourwork/impact#reduceexploitation, last viewed October 16, 2023. NCMEC reports anecdotally that this trend appears to be continuing in 2023. This increase is indeed disturbing and potential offenders need to be aware of the risks of prosecution and imprisonment that these offenses are accompanied by.

**(3) the kinds of sentences available;**

**(4) the kinds of sentence and the sentencing range established for—**

**(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--**

These factors support a sentence within the guideline range because they argue for uniform sentencing practices, and the guidelines are designed to achieve this outcome: "The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).

**(5) any pertinent policy statement**

The government is not aware of any applicable policy statements.

**(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and**

According to data from the U.S. Sentencing Commissions Judiciary Sentencing Information service, "During the last five fiscal years (FY2018-2022), there were 124 defendants whose primary guideline was §2G2.1, with a Final Offense Level of 40 and a Criminal History Category of I . . . the average length of imprisonment imposed was 246 months and the median length of imprisonment imposed was 240 months." PSR ¶ 88. However, the guidelines represent the best hope of consistent sentencing. Furthermore, the Sentencing Commission's 2012 report to Congress on Federal Child

Pornography Offenses ("Report"), which suggested changes to the sentencing guidelines regarding non-production offenses did not make similar recommendations regarding production guidelines. See Report at 330, https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses (last visited July 13, 2023).

In 2021 the Sentencing Commission issued a new report on "Federal Sentencing of Child Pornography Production Offenses." U.S.S.C. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf, last viewed October 16, 2023. "The issues the Commission discussed in the 2012 Child Pornography Report persist today: the continued growth in the number of child pornography production cases, the volume and accessibility of child pornography images due to advancements in technology, and the resulting lengthy sentences for child pornography production offenders." Id. at 7. It repeated its position in its 2012 report that "Child pornography production offenses cause substantial and indelible harm to victims." Id. at 7, citing 2012 Report. It also noted that at least in 2019, only slightly more than half production offenders received a sentencing enhancement under §4B1.5(b) for engaging in a pattern of activity involving prohibited sexual conduct, Id. at 25,

8

as is proposed here.    That difference along can account for the increase in the defendant's guideline range over the average length of imprisonment.

## Additional Supervised Release Condition Recommendation

The government requests that an additional provision be added to the supervised release conditions contained in the PSR:

> You must not contact the victims or any member of the victims' families by any means, either directly or indirectly through others. You must not provide information about the victims or the victims' families members' names, address[es], telephone numbers or any other contact information to others.

The government proposes this condition because it will help to assure that the victims and their families are not subjected to harassment or retaliation due to their cooperation with the investigation and prosecution of this case in violation of 18 U.S.C. § 1513.

## Defendant's Objections

The defendant has objected to the five level enhancement under U.S.S.G. § 4B1.5(b)(1).   Dkt. 41 at 1-2.   The defendant first objects to the enhancement "because the defendant's conduct does not constitute a pattern of activity of prohibited sexual conduct as required by the enhancement."

The government disagrees.   §4B1.5(b)(1) states that if a defendant should receive a 5 level enhancement if "defendant's instant offense of conviction is a covered sex crime, . . .   and the defendant engaged in a

9

pattern of activity involving prohibited sexual conduct." First, Application note 2 to this section defines "covered sex crime" as "an offense, perpetrated against a minor, under . . . chapter 110 of [title 18], not including trafficking in, receipt of, or possession of, child pornography." The defendant's two offenses of conviction – production of child pornography – are covered sex crimes because they arise under Title 18, chapter 110, and are not trafficking in, receipt of, or possession of, child pornography. Second, Application Note 4(A) defines "prohibited sexual contact" to include "the production of child pornography." Therefore these offenses are "prohibited sexual contact." The final requirement of §4B1.5(b)(1) is that there be a "pattern of activity" involving the prohibited sexual contact. Application Note 4(B)(i) provides that the defendant has done so "if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." And, this may be the case "without regard to whether the occasion occurred during the course of the instant offense."

The above definitions make it clear that the defendant's two convictions, both involving production of child pornography occurring at different times and involving different victims qualify for the §4B1.5(b)(1) enhancement.

The defendant next objects that use of §4B1.5(b)(1) constitutes "triple counting" "because Mr. Barnett already receives a two-level enhancement

10

because of multiple counts pursuant to USSG §3D1.4, and finally, because applying the enhancement under §4B1.5(b)(1) results in a final, triple enhancement." However, this idea assumes that first, the multiple count enhancement under USSG §3D1.4 is "double counting." The defendant notes that the Seventh Circuit has said that "double counting is impermissible only when the text of the applicable guideline specifically says so." *United States v. Vizcarra*, 668 F.3d 516, 518 (7th Cir. 2012). No such prohibition exists here. Furthermore, adding the §4B1.5(b)(1) enhancement on top of this doesn't violate any prohibition either. In fact, the enhancement can only apply if there are multiple qualifying occurrences. In a strikingly similar case, the 10th Circuit recently rejected this exact argument. *United States v. Cifuentes-Lopez*, 40 F.4th 1215, 1220-21 (10th Cir. 2022). In *Cifuentes-Lopez* the court explained that the two level multiple count enhancement of §3D1.4 and the five level enhancement of §4B1.5(b)(1) serve different purposes:

> [T]he two enhancements are directed to different purposes and aimed at different harms. The purpose of the multiple count enhancement in § 3D1.4 is to "provide incremental punishment for significant additional criminal conduct." See U.S.S.G. § 3D intro. cmt. The purpose of § 4B1.5(b)(1) is to protect minors from sex offenders "who present a continuing danger to the public." See U.S.S.G. § 4B1.5 cmt. bkgd. (noting that the enhancement is derived from a Congressional directive "to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual exploitation of minors"). Punishing an offender for additional criminal conduct and continued danger to the public is not double counting—those are two separate sentencing goals.

11

Id. at 1221 (citing cases).

Finally, the defendant also argues that his conduct didn't constitute a "pattern" because it involved "two separate incidents, separated geographically by thousands of miles and separated in time by nearly a year." He argues that there must be some connection between the two incidents and victims. However, this is not the case. United States v. Fox, 926 F.3d 1275, 1280 (11th Cir. 2019) ("The plain meaning of 'separate occasions' ... requires only events that are independent and distinguishable from each other. Multiple, distinct instances of abuse—whether ongoing, related, or random—meet the requirements under § 4B1.5(b)(1).").

Based on the above, the government asks that the defendant's objection to the five level enhancement pursuant to §4B1.5(b)(1) be denied.

## Conclusion

The government requests that the defendant be sentenced to a sentence of 292 months imprisonment, to be followed by 5 years supervised release, no fine, a $100 special assessment, no JVTA or AVAA assessments, and restitution to both victims in the amount of $3,000 absent further information received from the victims. The government also requests that the additional condition of supervised release proposed be adopted into the proposed

12

conditions of supervised release.

Dated: October 16, 2023

                              Respectfully submitted,

                              CLIFFORD D. JOHNSON
                              UNITED STATES ATTORNEY

By:   *s/ John M. Maciejczyk*
        John M. Maciejczyk
        Assistant United States Attorney
        United States Attorney's Office
        204 S. Main Street, Room M01
        South Bend, IN 46601
        Phone: (574) 236-8287